IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )    Cr. No. 22-20245-JTF |
| | ) |
| **UDELL CARROLL III,** | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Before the court is Defendant Udell Carroll III's Motion to Suppress. (ECF No. 39.) For the reasons below, the undersigned recommends that Carroll's motion be denied.

**I.   PROPOSED FINDINGS OF FACT**

The following proposed findings of fact are based on the evidence presented at the suppression hearing held on July 12, 2023, as well as the uncontroverted facts in the parties' briefs. The evidence presented at the hearing includes video[1] from the

---

[1] Carroll filed a letter with the court on August 14, 2023, alleging that the video from Agent Nash's body-worn camera was altered. First, this submission is impermissible under Local Rule 83.4(f), which provides, "[a] party represented by counsel who has appeared in a case may not act on his or her behalf unless that party's attorney has obtained leave of the Court to withdraw as counsel of record[.]" As Carroll is represented by counsel, this submission does not comply with the Local Rules. Second, with regard to the substance of Carroll's contention, the undersigned finds that there is no evidence to indicate that the video has been altered.

body-worn camera worn by Special Agent Andre Nash of the West Tennessee Drug Task Force ("WTDTF"), who testified credibly at the suppression hearing.

On November 19, 2021, Agent Nash was stationed at or around mile marker 27 on Interstate 40 in Fayette County, Tennessee. (ECF No. 39, at PageID 64.) Agent Nash conducted a traffic stop on a four-door Chevy Cruze after his radar clocked the speed of the vehicle at 74 miles per hour in a 70 miles per hour speed limit zone. (Tr., Page 7.)

Agent Nash approached the vehicle and spoke to the driver, who was later identified as Udell Carroll III. Agent Nash asked for Carroll's license, proof of insurance, and registration. (Ex. 1, at 0:00:31.) Agent Nash further requested that Carroll roll up his passenger-side window and exit the vehicle to prevent his dog from jumping out of the car. (Id. at 00:34-00:43.) After Carroll exited the vehicle, Agent Nash informed Carroll that he was pulled over for driving 74 miles per hour in a 70 miles per hour zone. (Id. at 00:58-01:04.) Carroll admitted to driving 74 miles per hour. (Id. at 01:04-01:06.) Agent Nash asked where Carroll was coming from and where he was heading. (Id. at 01:55.) Carroll told Agent Nash that he was coming from Arizona and heading to Virginia to his sister's house for Thanksgiving, though Carroll struggled to recall the name of the city in Virginia. (Id. at 01:56-02:13.) Agent Nash informed Carroll that he would run his license through

- 2 -

the computer system to confirm that the license was valid and to check for any outstanding warrants. (Id. at 02:34–02:38.) Agent Nash returned to his vehicle to conduct the database check through BLOC/HIDTA. (Id. at 03:02–07:03.)

Agent Nash exited his vehicle after inputting the information into BLOC/HIDTA and began asking Carroll questions, including whether he rented the vehicle, the name of the friend who rented the vehicle, and whether he had anything illegal in the vehicle. (Id. at 07:05–07:59.) Carroll stated that his friend rented the vehicle, but Carroll could not remember the full name of the friend. (Id.) Carroll denied having anything illegal in the vehicle. (Id.) Agent Nash then asked specifically if Carroll had any marijuana in the vehicle, and Carroll admitted to possessing an eighth of a gram of marijuana. (Id. at 08:00–08:04.) Agent Nash then asked whether Carroll had any cocaine, heroin, methamphetamine, illegal weapons, or any large amounts of currency in the vehicle. (Id. at 08:05–08:17.) Carroll denied possessing those items. (Id.) This interaction occurred while Agent Nash was still awaiting the results from the records check. (Tr., p. 33.)

Based on Carroll's admission that he had marijuana in the car, Agent Nash decided to search the vehicle. Before conducting the search, he asked if Carroll had a leash for his dog. (Ex. 1, at 08:35.) When Carroll said he had no leash, Agent Nash asked Carroll to grab his dog and sit in the back of Agent Nash's vehicle

- 3 -

with the dog so that Agent Nash could conduct a search of the vehicle. (Id. at 08:37-0:09:40.) Carroll asked why his vehicle was being searched, to which Agent Nash responded that it was because Carroll admitted to possessing marijuana, and marijuana is illegal in the state of Tennessee. (Id. at 09:00-09:07.) Before beginning the search of the vehicle, Agent Nash removed his body-worn camera and placed it on the dash of his vehicle[2]. (Id. at 09:42.)

Agent Nash and another officer, who by this time had arrived at the scene, proceeded to conduct a search of the vehicle with Carroll sitting in the back seat of Agent Nash's vehicle. (09:44-15:03.) During the search, Agent Nash found in the trunk seven large vacuum-sealed tubes containing what appeared to be marijuana in a blue and black bag. (Id. at 12:04-12:26.) Agent Nash then removed three bags from a blue hardshell suitcase, which contained methamphetamine pills and crystal methamphetamine. (Id. at 13:29-13:35.) Agent Nash also located two small Glad-loc bags containing THC cookies between the console and the passenger seat.

The vehicle was then towed to the WTDTF station for a comprehensive search. (ECF No. 37, at PageID 48; ECF No. 39, at

---

[2]At the suppression hearing, Agent Nash explained that it is standard operating procedure to remove the body-worn camera while searching a vehicle because it is an expensive piece of equipment that may fall off the officer's body into the searched vehicle. (Tr., p. 20.) Agent Nash highlighted that the standard procedure for vehicle searches is to place the body-worn camera on the dashboard of the vehicle where it can continue to record the officer's movements. (Id.)

- 4 -

PageID 66.) During this search, the officers found a small black Ruger 9mm handgun and additional rounds in a plastic Glad-loc bag. Carroll was transported to the WTDTF station, was read his Miranda rights (Ex. 2, 0:32-1:10), agreed to speak with the agents (id.), signed a Miranda warning rights form (Ex. 3), and admitted that he was delivering the narcotics found in the vehicle. (Ex. 2, 1:45-3:02, ECF No. 37, at PageID 48; ECF No. 39, at PageID 66.)

Carroll was charged with the following: (1) knowingly possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1); (2) knowingly and intentionally possessing with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 851(a)(1); and (3) knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (ECF No. 17.)

On May 5, 2023, Carroll filed a Motion to Suppress the physical evidence found in the vehicle, his statements made during the stop, and the statements made after receiving his Miranda rights. (ECF No. 37.) Carroll's motion was referred to the undersigned on May 9, 2023. (ECF No. 38.) The government filed its response on May 19, 2023. (ECF No. 39.) A suppression hearing was held on July 12, 2023. (ECF No. 44.)

## II.  PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. There are three permissible encounters between police and a citizen: (1) consensual encounters initiated by a police officer without an articulable reason in which the citizen is briefly asked questions, (2) a temporary involuntary detention or Terry stop supported by a "reasonable suspicion," and (3) arrests supported by probable cause. See United States v. Alston, 375 F.3d 408, 411 (6th Cir. 2004) (quoting United States v. Bueno, 21 F.3d 120, 123 (6th Cir. 1994)). For a Terry stop, courts "employ a two-part inquiry that asks whether there was a proper basis for the stop and whether the degree of intrusion was reasonably related in scope to the circumstances of the stop." United States v. Castle, No. 130929928-JPM, 2013 WL 2443235, at *3 (W.D. Tenn. June 4, 2013) (quoting United States v. Guajardo, 388 F. App'x 483, 487 (6th Cir. 2010)).

**A.   Agent Nash Had a Proper Basis for Initiating the Stop**

The undersigned finds that Agent Nash had a proper basis for pulling over Carroll for speeding. This circuit applies two different standards for traffic stops depending upon the nature of the alleged infraction. For "completed" traffic violations, the Sixth Circuit has required probable cause to justify an investigatory stop. United States v. Guajardo, 388 F. App'x 483, 487 (6th Cir. 2010); see also United States v. Eggleston, No. 20-cr-20121-JTF-tmp, 2021 WL 1324625, at *2 (W.D. Tenn. Feb. 12, 2021)

(citing Guajardo). However, for "ongoing" traffic violations, the Sixth Circuit requires that the officer only have a reasonable suspicion to justify an investigatory Terry stop. United States v. Simpson, 520 F.3d 531, 541 (6th Cir. 2008); see also Eggleston, 2021 WL 1324625, at *2 (citing Simpson).

A traffic violation is deemed "completed" when, by the time the driver is pulled over, he or she is no longer committing the violation, whereas a violation is deemed "ongoing" when the violation does not cease when the driver is pulled over. Compare United States v. Jeffries, 457 F. App'x 471, 477 (6th Cir. 2012) ("Out of an abundance of caution, we assume that [defendant's] driving too closely was a completed traffic violation—insofar as the violation was completed by the time she was pulled over—and therefore the probable cause standard applies") with Eggleston, 2021 WL 1324625, at *2 ("One such ongoing traffic violation is driving with an obstructed license plate . . . as the violation continues after the driver is pulled over").

Because Carroll's speeding was a completed traffic violation, the probable cause standard applies. "The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Myers v. Village of New Holland, Case No. 2:19-cv-01458, 2022 WL 1211419, at *12 (S.D. Ohio Apr. 25, 2022) (quoting Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)). An officer's use of a radar

to clock the speed of a driver is sufficient to establish probable cause that a driver is speeding. Id.

Here, the undersigned is satisfied that Agent Nash had probable cause to pull over Carroll for speeding. Agent Nash testified that he used the radar to clock in Carroll's speed at 74 miles per hour in a 70 miles per hour zone. During the stop, Carroll admitted that he was driving 74 miles per hour, and he does not dispute that Agent Nash had a proper basis to initiate the traffic stop (ECF No. 37, at PageID 52.) Therefore, the initial stop was proper.

**B.   Miranda Was Not Triggered During the Traffic Stop**

The undersigned finds that this stop constituted a Terry stop rather than a custodial interrogation, the latter of which would have triggered an obligation to administer Miranda warnings. Officers must provide Miranda warnings when a suspect is "in custody" and "subjected to interrogation." Miranda v. Arizona, 384 U.S. 436, 467 (1966); see also Dickerson v. United States, 530 U.S. 428, 435 (2000). Custody in this context turns on "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." United States v. Dunn, No. 3:21-CR-45-BJB, 2022 WL 711131, at *6 (W.D. Ky. Mar. 9, 2022) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983); Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). "[P]ersons temporarily detained pursuant to a traffic stop are not 'in custody' for the

purposes of Miranda." Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (internal quotation marks omitted)). "But if the traffic stop becomes more coercive than usual, then the suspect is 'entitled to the full panoply of protections,' including Miranda's prophylactic warnings regarding their Fifth Amendment rights." Id.; see also United States v. Howard, 815 F. App'x 69, 79 (6th Cir. 2020) (no Miranda warnings required because stop was not "more coercive than ordinary traffic stop").

"Courts evaluate 'the totality of the circumstances' from the perspective of 'a reasonable man in the suspect's position' to determine if a suspect is in custody." Id. (quoting United States v. Swanson, 341 F.3d 524, 528 (6th Cir. 2003) (quotation omitted)). Courts consider the following factors:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police ... [or] acquiesced to their requests to answer some questions.

Id. (quoting United States v. Salvo, 133 F.3d 943, 950 (6th Cir. 1998)).

After considering the evidence and applying the relevant factors, the undersigned finds that this stop was not a custodial interrogation triggering Miranda. This case involves a traffic

stop for speeding, which the Supreme Court has explained does not count as "custody" for the purposes of Miranda. See Berkemer, 468 U.S. at 440. The questioning was limited to those items that were relevant to the traffic stop itself. A traffic stop on the side of the road is "presumptively temporary and brief, in contrast to prolonged stationhouse interrogation . . . in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." Dunn, 2022 WL 711131, at *6 (quoting Berkemer, 468 U.S. at 437). The questions themselves only took a few minutes. Carroll was physically unrestrained during the initial line of questioning prior to his admitting to possessing marijuana in the vehicle. Although Carrol was not free to leave, all of the other factors demonstrate that he was not subjected to custodial interrogation. Therefore, the undersigned finds that Agent Nash did not violate Carroll's Fifth Amendment rights during the traffic stop.

**C.   Agent Nash Did Not Exceed the Scope and Duration of the Terry Stop**

The undersigned finds that Agent Nash did not exceed the scope of the stop when asking Carroll certain questions while awaiting the results of the records check. A Terry stop must be limited in both scope and duration, meaning that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of

time . . . [and] an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." United States v. Bowman, No. 1:21-cr-56-TRM-SKL, 2022 WL 1518251, at *7 (E.D. Tenn. Feb. 11, 2022) (quoting United States v. Cochrane, 702 F.3d 334, 340 (6th Cir. 2012)).

Traffic stops may be no longer than necessary to complete the "mission" of the stop, which is "to address the traffic violation that warranted the stop and attend to related safety concerns." United States v. Alderson, Case No. 3:21-cr-00068, 2022 WL 3356025, at *3 (M.D. Tenn. Aug. 12, 2022) (quoting Rodriguez v. United States, 575 U.S. 348, 354 (2015)). During these traffic stops, officers may conduct "ordinary inquiries," including "checking the driver's license, determining whether there are any outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Id. (quoting Rodriguez, 575 U.S. at 355). In addition to these ordinary inquiries, officers may conduct "unrelated investigations" during the stop "so long as unrelated inquiries do not measurably extend the duration of the stop." Id. at *4 (quoting Rodriguez, 575 U.S. at 355). "[A]n officer may ask unrelated questions to his heart's content, provided that he does so during the supposedly dead time while he or another officer is completing a task related to a traffic violation." United States v. Howard, 815 F. App'x 69, 75 (6th Cir. 2020) (quoting United States v. Everett, 601 F.3d 484, 488 (6th

- 11 -

Cir. 2010) (abrogated on other grounds by Rodriguez, 575 U.S. at 357)).

Agent Nash's line of questioning did not impermissibly exceed the scope or duration of the traffic stop. Agent Nash informed Carroll that he was pulled over for speeding and would run Carroll's license, tag information, and insurance through BLOC/HIDTA to ensure that there were no outstanding warrants. Agent Nash asked routine, context-setting questions, such as Carroll's travel plans, to which Carroll explained that he was driving from Arizona to his sister's home for Thanksgiving in Virginia. However, Carroll was unable to immediately recall the name of the city in Virginia to which he was traveling. While waiting for the check to be completed, Agent Nash asked Carroll for the name of the friend who rented the vehicle, but Carroll was unable to provide the friend's full name. Further, Agent Nash's questions on matters unrelated to the traffic stop itself were asked during the "dead time" while the check on the license was still being run. Therefore, the undersigned finds that the questions asked during this Terry stop did not exceed the scope and duration of the traffic stop.

**D.  Agent Nash Had Probable Cause to Search the Vehicle**

The undersigned finds that Agent Nash had probable cause to search the vehicle. "Under the automobile exception, if there is probable cause to believe the vehicle contains contraband or

evidence of criminal activity, law enforcement may conduct a warrantless search or may seize the vehicle without a warrant and hold it for whatever period is necessary to obtain a warrant for the search." United States v. Carney, No. 3:22-cr-00174, 2023 WL 3346103, at *3 (M.D. Tenn. May 10, 2023) (quoting United States v. Shelton, 817 F. App'x 629, 634 (10th Cir. 2020) (citing Chambers v. Maroney, 399 U.S. 42, 51–52 (1970); United States v. Galvez, 645 F.3d 347, 355 (6th Cir. 2011)). "An officer has probable cause if a suspect admits to possessing marijuana in the car." United States v. Lewis, No. 6:21-CR-44-REW-HAI, 2022 WL 1091742, at *5 (E.D. Ky. Apr. 12, 2022) (citing United States v. Lott, No. 6:17-CR-52-GFVT, 2018 WL 2347072, at *3 (E.D. Ky. May 23, 2018), aff'd, 954 F.3d 919 (6th Cir. 2020)). A search under the automobile exception "may include all parts of a legitimately stopped vehicle, including the trunk and all containers." United States v. Harris, 578 F. Supp. 930, 936 (E.D. Mich. 2022) (citing United States v. Burns, 298 F.3d 523, 542 (6th Cir. 2002)).

Here, the undersigned finds that Agent Nash had probable cause to search the vehicle. Carroll admitted to possessing an eighth of a gram of marijuana in the vehicle, a violation of Tennessee law. This admission alone gave Agent Nash probable cause to search the vehicle to uncover contraband contained in the vehicle. Therefore, the undersigned finds that there is no basis to suppress the physical evidence that was the result of the vehicle search.

**E.   Carroll's Post-Miranda Statements Were Not Tainted by Initial Illegality**

Finally, the undersigned finds that Carroll's post-Miranda statements at the WTDTF station should not be suppressed because there was no prior illegal search or Fifth Amendment violation that would lead to the exclusion of Carroll's post-Miranda statements. Relying upon Missouri v. Seibert, 542 U.S. 600 (2004), Carroll argues that the post-Miranda statements should be suppressed because the Miranda warnings were given "midstream," such that the first, unwarned interrogation and the interrogation that occurred post-Miranda warnings were a single sequence of questioning.

Carroll's reliance upon Seibert is misplaced for many reasons, as there is no factual or legal basis to support Carroll's position. In Seibert, the police arrested Seibert, did not issue Miranda warnings, questioned Seibert for thirty to forty minutes, obtained a confession, returned twenty minutes later, issued her Miranda warnings, and resumed questioning while confronting her with her prewarning statements to get her to repeat the confession. Seibert, 542 U.S. at 600. Carroll was not subjected to "systemic, exhaustive or coordinated questioning" that the Supreme Court contemplated in Seibert. United States v. Woolridge, 64 F.4th 757, 760-61 (6th Cir. 2023) (citing Seibert). Carroll was not subjected to custodial interrogation when he admitted to possessing

marijuana in his vehicle. Carroll was issued his Miranda warnings prior to the custodial interrogation that occurred at the WTDTF office. (Ex. 2, 0:32-1:10.) After receiving these warnings, Carroll agreed to speak with the officers and signed a Miranda waiver of rights form. (Id. at 1:10; Ex. 3.) There are no grounds to exclude Carroll's post-Miranda statements.

### III. RECOMMENDATION

For the reasons above, it is recommended that Carroll's Motion to Suppress be denied.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

August 22, 2023
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL**