IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>UDELL CARROLL, III,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 2:22-cr-20245-JTF-tmp<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Magistrate Judge's Report and Recommendation on Defendant's Motion to Suppress, ("R & R") submitted August 22, 2023. (ECF No. 50.) Defendant Udell Carroll filed an initial Motion to Suppress on May 5, 2023. (ECF No. 37.) The Motion was referred to the Magistrate Judge on May 9, 2023. (ECF No. 38.) The Government filed its Response on May 19, 2023. (ECF No. 39.) The Magistrate Judge held a hearing on the Motion on July 12, 2023. (ECF No. 44.) After this hearing, the Magistrate Judge submitted the present R & R recommending that the Motion to Suppress be denied. The Government filed Notice that it did not object to the R & R on August 29, 2023. (ECF No. 51.) Carroll filed objections to the R & R on September 8, 2023, and September 25, 2023. (ECF Nos. 60 & 62.)  Carroll also filed a letter to the Court containing what purports to be additional argument, which the Court construes as an additional Objection. (ECF No. 68.)  For the following reasons, the R & R is **ADOPTED**, and the Motion to Suppress is **DENIED**.

I.       STANDARD OF REVIEW

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. *See* 28 U.S.C. § 636(b)(1)(A). Upon hearing a pending matter, "the magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x. 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate judge's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2). A failure to file specific objections to a Magistrate Judge's report does not meet the requirement of filing an objection at all. *Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 509 (6th Cir. 1991); *McCready v. Kamminga*, 113 Fed. App'x. 47, 49 (6th Cir. 2004). However, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee notes. The district court is not required to review, and indeed "should adopt[,] the findings and rulings of the Magistrate Judge to which no specific objection is filed." *Brown v. Bd. of Educ. of Shelby Cty. Sch.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

The standard of review that is applied by a district court when considering a magistrate judge's proposed findings and recommendations depends on the nature of the matter(s) considered by the magistrate judge. *See Baker*, 67 Fed. App'x at 310 (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for non-dispositive

preliminary measures. A district court must review dispositive motions under the *de novo* standard."). Where timely, specific objections are filed, the parts objected to are reviewed under a *de novo* standard. *Rugiero v. United States*, 330 F. Supp. 2d 900, 904 (E.D. Mich. 2004). Upon a review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Brown v. Board of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1). The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions." *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015). Again, a district judge should adopt the findings and rulings of the magistrate judge to which no specific objection under Fed. R. Civ. P. 72(b) is filed. *Brown*, 47 F. Supp. 3d at 674. An objection to a magistrate judge's report and recommendation that does nothing more than state a disagreement with the magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection, as required to preserve the right to appeal a subsequent order of the district court adopting the report. *J.A. v. Smith County School District*, 364 F. Supp. 3d 803, 811–12 (M.D. Tenn. 2019).

## II.   FINDINGS OF FACT

The R & R's Proposed Findings of Fact are an accurate representation of the facts and are hereby **ADOPTED** and are summarized in relevant part below. Carroll did not raise any objections to the Magistrate Judge's Findings of Fact.

On November 19, 2021, Agent Nash, who was stationed around mile marker 27 on Interstate 40 in Fayette County, Tennessee, conducted a traffic stop on a four-door Chevy Cruze after his radar clocked the speed of the vehicle at 74 miles per hour in a 70 miles per hour speed limit zone. (ECF No. 50, 2.) Agent Nash approached the vehicle and spoke to the driver, Udell

Carroll III. (*Id.*) He asked for Carroll's license, proof of insurance, and vehicle registration. (*Id.*) He also asked Carroll to roll up his passenger-side window and exit the vehicle to prevent his dog from jumping out. (*Id.*) Once Carroll exited the vehicle, Agent Nash informed him that he had been pulled over for speeding in a 70 miles per hour zone. (*Id.*) Carroll then admitted that he was going 74 miles per hour. (*Id.*)

Agent Nash asked where Carroll was coming from and where he was heading. (*Id.*) Carroll told him that he was coming from Arizona and heading to his sister's house in Virginia for Thanksgiving but was unable to recall the name of the city in Virginia. (*Id.*) Agent Nash then informed Carroll that he would run his license through the computer system to confirm that the license was valid, and to check for any outstanding warrants. (*Id.* at 2-3.) Agent Nash returned to his vehicle to conduct the database check through BLOC/HIDTA. (*Id.* at 3.)

After inputting the information, Agent Nash exited his vehicle and began asking Carroll questions while waiting for the results from the records check. (*Id.* at 3.) He began by asking whether Carroll rented the vehicle, the name of the friend who rented the vehicle, and whether he had anything illegal in the vehicle. (*Id.*) Carroll informed Agent Nash that his friend rented the vehicle but could not remember the friend's full name. (*Id.*) Carroll denied having anything illegal in the vehicle, but admitted to possessing an eighth of a gram of marijuana after Agent Nash asked specifically if he had any marijuana in the vehicle. (*Id.*) Agent Nash then asked whether Carroll had any cocaine, heroin, methamphetamine, illegal weapons, or any large amounts of currency in the vehicle. (*Id.*) Carroll denied possessing any of those items. (*Id.*)

Agent Nash searched the vehicle based on Carroll's admission that he had marijuana in the car. (*Id.*) Before conducting the search, he asked Carroll if he had a leash for his dog. (*Id.*) When Carroll said he did not, Agent Nash asked him to grab his dog and sit in the back of his police

4

vehicle so that he could conduct a search of Carroll's vehicle. (*Id.* at 3-4.) Carroll then asked why his vehicle was being searched. (*Id.* at 4.) Agent Nash responded that it was because he admitted to possessing marijuana, which is illegal in Tennessee. (*Id.*) In accordance with standard operating procedure, Agent Nash removed his body-worn camera and placed it on the dash of his vehicle before beginning the search. (*Id.*)

Agent Nash then conducted a search of the vehicle alongside another officer who had arrived at the scene. (*Id.*) During the search, he found seven large vacuum-sealed tubes containing what appeared to be marijuana in a blue and black bag in the trunk. (*Id.*) Agent Nash then removed three bags from a blue hardshell suitcase, which contained methamphetamine pills and crystal methamphetamine. (*Id.*) He also located two small Glad-loc bags containing THC cookies between the console and the passenger seat. (*Id.*)

The vehicle was then towed to the WTDTF station for a comprehensive search. (*Id.*) During this second search, the officers found a Ruger 9mm handgun and additional rounds in a bag. (*Id.* at 5.) Carroll was transported to the WTDTF station, was read his *Miranda* rights, signed a *Miranda* waiver, and then admitted to the agents that he was delivering the narcotics found in the vehicle. (*Id.*)

Carroll was charged with the following: (1) knowingly possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1); (2) knowingly and intentionally possessing with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 851(a)(1); and (3) knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (*Id.*)

In the underlying Motion to Suppress, Carroll argued that while there was a proper basis for the stop, the scope of the stop was unreasonable, the degree of intrusion was not reasonably

related in scope to the situation at hand, Agent Nash's questioning of Carroll during the stop violated his *Miranda* Rights, and that the statements Carroll provided after he was read his *Miranda* warning were tainted by initial illegality and should similarly be suppressed. (ECF No. 37, 6-12.)

### III.    CONCLUSIONS OF LAW

The Chief Magistrate Judge recommends that the Court deny Defendant's Motion to Suppress because: (1) Agent Nash had a proper basis for initiating the stop; (2) *Miranda* was not triggered during the traffic stop; (3) Agent Nash did not exceed the scope and duration of the *Terry* Stop; (4) Agent Nash had probable cause to search the vehicle; and (5) Carroll's post-*Miranda* statements were not tainted by initial illegality. (ECF No. 50, 6-15.) As explained in the following section, while Carroll has filed objections to the Magistrate Judge's Conclusions of Law, they raise arguments that were not properly before the Magistrate Judge and are therefore waived. The Magistrate Judge's findings contain no clear error, and his conclusions of law are hereby **ADOPTED**.

### IV.    OBJECTIONS

Carroll raises two objections to the R & R: (1) that the initial stop was unconstitutional; and (2) that the scope and duration of the stop cannot be determined due to spoilation by government. (ECF No. 60, 1-4.) The Magistrate Judge never had the opportunity to consider either issue because they were not raised in Carroll's Motion to Suppress. In fact, Carroll's Motion conceded that there was a proper basis for the stop, as he told the officer that he was speeding. (See ECF No. 37, 6-7.) His objection that Agent Nash's bodycam footage has been altered was similarly not properly before the Magistrate Judge. Carroll first made this claim in a letter to the court dated August 14, 2023, over a month after the suppression hearing. (ECF No. 45.) Judge Pham still acknowledged the letter in his R & R, noting that a *pro se* litigant is not permitted to

6

submit materials while represented by counsel and finding the substance of Carroll's contention to be meritless. (ECF No. 50, 1.) The Court has also reviewed the record, including the video, as well as supporting testimony, and concurs with the Magistrate Judges' finding and conclusion that there is no evidence to indicate improper alteration.

Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 et seq., permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). "A party's failure to raise an argument before the magistrate judge constitutes a waiver." *The Glidden Co. v. Kinsella*, 386 F. App'x 535, 544 n.2 (6th Cir. 2010) (quoting *Murr*, 200 F.3d at 902 n.1). Carroll's objections are waived to the extent that they raise new issues and arguments that were not presented to the Magistrate Judge at the suppression hearing. Nevertheless, the Court considers the substance of the objections below.

    A.  *Objection No. 1: The Constitutionality of the Initial Stop*

Carroll contends that the initial stop was unconstitutional because previous defense counsel did not subpoena the Automatic Vehicle Locator records and Agent Nash never informed him of the speed he was traveling. (ECF No. 62, 1-2.) Neither part of the objection affects the propriety of the stop. First, as for the Automatic Vehicle Locator records, Carroll does not provide any evidence tending to cast doubt on Agent Nash's testimony that he was where he said was. The Court cannot infer unconstitutionality from the Government's failure to provide evidence supporting a claim that was not in issue. Turning to the second part of Carroll objection, he states that the officer informed him that he had been stopped for speeding, but never disclosed the speed he clocked Carroll at. (*Id*. at 2.) The Court has reviewed the bodycam footage and concludes that

this is accurate. However, after Agent Nash informed Carroll that he was speeding, Carroll responded without prompting that he was traveling 74 m.p.h. Even so, the constitutionality of the stop does not hinge on whether Carroll was told the precise speed he was going. Thus, the Court would not find the stop unconstitutional on this basis even if it were properly raised.

    B.  <u>Objection No. 2: The Scope and Duration of the Stop</u>

Carroll next argues that the government spoiled the evidence, rendering it impossible to determine whether the scope and duration of the *Terry* Stop was constitutional. (ECF No. 62, 2.) He specifically contends that the video evidence was altered. (*Id.*) His proof of this relies on an alleged discrepancy between the time stamp of certain relevant events in Agent Nash's body camera footage and the HIDTA Encounter Work Sheet ("Sheet") that recorded the details of the call to run the license plate.[1] (*Id.*)

Carroll's argument is based on the initial stop time and the time when Agent Nash placed the call to run Carroll's license plate. The Sheet reflects that the initial stop occurred at 6:55 am, and the time entry under the "Received Date/Time" reads 7:03 am. (*Id.* at 6.) In contrast, the bodycam footage shows that Agent Nash went back to his vehicle to place the call 3 minutes and 58 seconds into the bodycam recording, and then exited his vehicle to speak to Carroll again at 7 minutes and 4 seconds in (*Id.* at 3.) Thus, Carroll believes the "Received Date/Time" entry on the Sheet should be 6:58 or 6:59 am to be consistent with the bodycam time stamps. (*Id.*) Without support, Carroll argues that the Government has deliberately deceived the Court because of this 5-

---

[1] During the suppression hearing, the Magistrate Judge heard testimony from Joyce King, the investigator with the Federal Defender's Office in the Western District of Tennessee who was assigned to this matter. (*See* ECF No. 59, 83-97.) In her testimony, she described the extent of her involvement in the case, which included executing a subpoena on the Assistant Chief Counsel for Homeland Security Investigation for any and all "records, transcripts, duplicate tapes, event logs, or communications involving 911 transmissions between BLOC Dispatch in Biloxi, Mississippi, and Agent Andre Nash" generated in conjunction with the events giving rise to Carroll's arrest. (*Id.* at 84-85.) The Court has reviewed the suppression hearing transcript and finds that the investigator comprehensively considered and addressed the alleged discrepancies Carroll now raises in his objections to the R & R.

minute difference between the body camera time stamp for when the call occurred, and the Sheet's logged 7:03 am time. (*Id.* at 3-4.) He concludes that the evidence was spoiled by this alleged deception, apparently making it impossible for the Court to determine whether the scope and duration of the *Terry* Stop was proper. (*Id.* at 4.)

This argument is not compelling. First, Carroll's argument assumes that the initial stop occurred at exactly 6:55 am, and Agent Nash turned on his camera at the same time, down to the second. Even a slight difference in both times could yield the ultimate 5-minute discrepancy, as the Sheet only provides the hour and minute that the stop and call occurred. Still, assuming *arguendo* that Agent Nash's body camera and the Sheet's logged time were perfectly time-synced, it would not follow that there is a five-minute gap in the two timelines, as it is unclear whether the Sheet's "Received Date/Time" entry tracks the time that the call was initiated, or the time that it ended, and the license plate query began. If it is the latter, then the time discrepancy is reduced to mere seconds, as the body cam footage reflects that the call ended 7 minutes and 4 seconds after the start of the video, which would mean that the proper Sheet time would be 7:02:04 am.

In a letter to the Court filed on November 7, 2023, Carroll adds more substance to this objection. (ECF No. 68.) He claims that in these 5 missing minutes, Agent Nash told him that he cleared the rental car prior to pulling him over, and that Carroll would be free to go after he ran his name through the system. (*Id.* at 1.) Carroll maintains that 5 minutes later, the agent told him that he "checked out" but he needed more information, which suggests that the marijuana inquiry and subsequent incriminating statements unlawfully extended the traffic stop. (*Id.*) However, after reviewing the suppression hearing record, the statement Carroll is alluding to was captured in the bodycam footage. At timestamp 0:02:33, Agent Nash stated "what I'ma do is run your driver's license, make sure it's valid make sure it don't have no warrants. I'm gonna try to get you on your

way." (Ex. 1, 0:02:33-0:02:39.) After entering his vehicle to make the call into BLOC/HIDTA, Agent Nash stepped out of the vehicle and informed Carroll that "what I've done is I've ran your driver's license, *we're just waiting for them to return*, long as you've got a valid license, no warrants, I'm gonna give you a verbal warning, get you on your way." (*Id.* at 0:07:14-0:07:22.) (emphasis added).

The significance of these remarks is twofold. First, the statements are substantively nearly identical to those that Carroll claims occurred in the 5 minutes that are missing from the bodycam footage.[2] Second, they demonstrate that the subsequent inquires, to which Carroll ultimately admitted that he had marijuana in the vehicle, occurred *during* the traffic stop. *See United States v. Howard*, 815 F. App'x 69, 75 (6th Cir. 2020) ("[A]n officer may ask unrelated questions to his heart's content, provided he does so during the supposedly dead time while he or another officer is completing a task related to the traffic violation") (quoting *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (abrogated on other grounds by Rodriguez, 575 U.S. at 357)); *and Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). Despite what Carroll claims in his letter, Agent Nash clearly informed him that the stop had not yet been completed when he resumed asking him questions. Hence, Carroll's November 7, 2023 letter does not change the Court's ultimate determination as to the propriety of the stop.

Nevertheless, assuming that there is 5 minutes of missing footage, the Court would still not find that this warrants suppression of the evidence, as Carroll has failed to allege that anything of

---

[2] While it is not relevant to the Court's determination, it is notable that 4 minutes and 49 seconds elapsed between Agent Nash's first remark at 0:02:33-0:02:39 and his second at 0:07:14-0:07:22 when measured beginning to end. This strongly suggests that these 5 minutes, which have not been excised from the bodycam footage on record, are the 5 minutes that Carroll believes the Government or Agent Nash edited out.

significance occurred in the few minutes he claims are missing from the footage. Substance aside, the scope and duration of the *Terry* Stop would still be reasonable even if it were 5 minutes longer, as Carroll claims. For these reasons, the Court finds that Carroll's objection does not have merit.

## V.     CONCLUSION

Consistent with the foregoing, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation that Carroll's Motion to Suppress be **DENIED**.

**IT IS SO ORDERED** this 1st day of December, 2023.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge
